## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**METROPOLITAN PROPERTY AND**
**CASUALTY INSURANCE COMPANY**                                    **PLAINTIFF**

**v.**                              **Case No. 4:20-cv-00501 KGB**

**JOSHUA D. MOODY,** *et al.*                                    **DEFENDANT**

<u>**ORDER**</u>

Before the Court are plaintiff Metropolitan Property and Casualty Insurance Company's ("Metropolitan") motion for summary judgment and defendants Joshua D. Moody, David Moody, and Gwendolyn Moody's cross-motion for summary judgment (Dkt. Nos. 15; 19). Defendants Joshua D. Moody and Gwendolyn Moody filed a response to Metropolitan's motion (Dkt. No. 20), and defendant David Moody filed a response to Metropolitan's motion (Dkt. No. 22). Metropolitan filed a response to defendants' motion for summary judgment and a reply in support of Metropolitan's motion (Dkt. No. 23). Defendants Joshua D. Moody and Gwendolyn Moody also filed a reply (Dtk. No. 25). For the following reasons, the Court denies Metropolitan's motion and defendants' cross-motion for summary judgment (Dkt. Nos. 15; 19). The Court grants the parties' joint motion for limited relief of the Court's Scheduling Order (Dkt. No. 35). The Court directs the parties to file with the Court within 21 days from the entry of this Order a joint written status report informing the Court of the status of discovery and proposing deadlines for discovery and other pretrial deadlines to be reset by the Court. The Court will reset this matter for trial by separate Order.

### I.      Overview

The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,0000.00. The Court

is authorized to declare the rights and duties and obligations of the parties with respect to a contract of insurance pursuant to Rule 57 of the Federal Rules of Civil Procedure and Arkansas Code Annotated § 16-111-101 to § 16-111-111.  Federal courts with diversity jurisdiction apply the substantive law of the forum state.  *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

### A.   Metropolitan's Motion For Summary Judgment

In its complaint, Metropolitan seeks a declaration of the rights and obligations of the parties under the Metropolitan Personal Excess Liability Policy issued to separate defendants David Moody and Gwendolyn Moody, with an effective term of February 15, 2017, to February 15, 2018, Policy No. 7652530690 (hereinafter the "Policy").  Metropolitan maintains that the Policy expressly excludes excess liability coverage for damage to the owned property or personal injuries sustained by an "insured," including any resident-relative of the named insured's household (Dkt. No. 1, ¶ 15).

In its motion for summary judgment, Metropolitan argues that Joshua D. Moody was a resident of the household of David Moody and Gwendolyn Moody at the time of the subject single-vehicle motor vehicle accident involving Joshua D. Moody and David Moody (Dkt. No. 15, ¶ 2). Metropolitan contends that, as such, Joshua D. Moody was an "insured," as a matter of Arkansas law, under the Policy, which precludes the Policy's excess liability coverage from applying to Joshua D. Moody's claims against his father David Moody (*Id.*, ¶ 3).  Further, Metropolitan contends that David Moody, as the named insured to the Policy, executed an Arkansas Personal Auto Application, a Personal Umbrella Application, and a Homeowner Application with Metropolitan in January 2017 in which he noted Joshua D. Moody to be a resident of his household (*Id.*, ¶ 4).  As a result, Metropolitan claims it owes no excess liability coverage to David Moody for the claims of his son Joshua D. Moody (*Id.*, ¶ 5).

### B.   Defendants' Cross-Motion For Summary Judgment

Defendants assert that, as a matter of law, Joshua D. Moody was not residing in the household of David Moody and Gwendolyn Moody at the time of the accident on November 10, 2017, and that therefore Metropolitan has a duty to defend and indemnify David Moody with respect to the November 10, 2017, accident in which Joshua D. Moody was injured (Dkt. No. 19, at 1).

### II.   Policy Provisions

The Policy provides in pertinent part as follows:

### INSURANCE AGREEMENT AND DECLARATIONS

This insurance policy is a legal contract between **you** (the policy owner) and us (the Company named in the Declarations).  It insures you for the various kinds of insurance shown in the Declarations.  The Declarations are an important part of this policy.  By acceptance of the policy, **you** agree that the statements contained in the Declarations and in any application are **your** true and accurate representations. This policy is issued and renewed in reliance upon the truth of such representations. The terms of this policy impose joint obligations on all persons defined as **you**. This means that the responsibilities, acts and failures to act of a person defined as **you** will be binding on another person defined as **you**.

As long as **you** pay **your** premium, we agree to provide **you** or others the benefits in which **you** or they are entitled.  The exact terms and conditions are explained in the following pages.

### SECTION I
### COVERAGE

### PERSONAL EXCESS LIABILITY (LIABILITY)

We will pay all sums in excess of the **retained limit** for **damages** to others caused by an **occurrence** for which the law holds an insured responsible and to which this policy applies.  **We** will not pay more than the limit shown in the Declarations for Liability.

### DEFENSE – SETTLEMENT

**We** will defend the **insured** at **our** expense with attorneys of **our** choice, against any suit or claim covered under this policy but not covered under any **underlying**

**policy** or any other insurance available to the **insured**.  **We** will not defend any claim or suit not covered by an **underlying policy** because of **your** failure to maintain the required **underlying policy**.

(Dkt. No. 1, at 17).

The Policy defines "you and "your" as follows:

The following words and phrases appear repeatedly throughout the various sections of this policy.  They have a special meaning and are to be given that meaning whenever used in connection with this policy or any endorsement which is party of this policy:

**"You"** and **"your"** means the named **insured** shown in the Declarations and that person's resident spouse.

(Dkt. No. 1, at 20).

In pertinent part, the Policy defines "insured" as "**you** or a **relative** residing in **your** household," (Dkt. No. 1, at 20), and a "relative" as meaning "a person related to **you** by blood, marriage or adoption." (Dkt. No. 1, at 21).

The foregoing excess liability coverage is limited under the Policy by certain exclusions, including the following:

**SECTION II**
**EXCLUSIONS**

This policy does not apply to **personal injury** or **property damage**:

. . .

H.  to any property owned by an **insured**.

. . .

K.  **personal injury** to any **insured**.

(Dkt. No. 1, at 18).

4

On the same page that the policy identifies the named insureds as David Moody and Gwendolyn Moody, the Policy identifies household vehicle, address, and driver information:

**YOUR POLICY HAS BEEN ISSUED AND RATED BASED ON THE FOLLOWING INFORMATION.   PLEASE NOTIFY US OF ANY CHANGES.**

**VEHICLES:**

| YEAR | MANUFACTURER | MODEL | BODY TYPE |
|------|--------------|-------|-----------|
| . . . | | | |
| 2002 | TOYOTA | MR2 SPY | CONVRT |

**RESIDENCES:**

3700 ROYAL OAK DR.      NORTH LITTLE ROCK      AR      72116

**\*\*\* HOUSEHOLD DRIVERS \*\*\***

[DOB]     WILLIAM D MOODY
[DOB]     GWENDOLYN MOODY
[DOB]     JOSHUA MOODY

**IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

(Dkt. No. 1, at 13).

### III.     Factual Background

The following statements of fact are taken from the parties' filings, including: Metropolitan's statement of undisputed facts (Dkt. No. 17); defendants' separate statement of material facts about which genuine disputes exist (Dkt. No. 21); Metropolitan's response to statement of uncontroverted material facts of defendants Joshua D. Moody and Gwendolyn Moody

contained in defendants' cross-motion for summary judgment (Dkt. No. 24); and reply suggestions in support of defendants' cross-motion for summary judgment (Dkt. No. 25).

On November 20, 2017, defendant Joshua D. Moody was a passenger in a car he owned that was being driven by his father, defendant David Moody (Dkt. No. 24, ¶ 1).  David Moody lost control of the car, and the car struck a tree (*Id.*, ¶ 2).  Defendants contend that Joshua D. Moody suffered a traumatic brain injury in the accident and had to have both sides of his skull replaced with a 3D titanium mesh material (*Id.*, ¶ 3).

It is undisputed that David and Gwendolyn Moody have resided at 3700 Royal Oak Drive, North Little Rock, Arkansas, since 2009 (*Id.*, ¶ 3).

Defendants assert the following factual statements, to which Metropolitan responds. Defendants assert that Joshua D. Moody graduated high school in 2014 and continued to reside with his parents, David and Gwendolyn Moody, until 2015 when he "moved out." (*Id.*, ¶ 5). Defendants assert that, in 2015, Joshua D. Moody moved to Fayetteville, Arkansas, where [he] worked and resided with roommates for approximately one year pursuant to a lease agreement he signed (*Id.*, ¶ 6).  From August 1, 2016, through July 31, 2017, Joshua D. Moody and a roommate resided at an apartment at 520 North Maple, Apartment 231, North Little Rock, Arkansas, a complex referred to as Argenta Flats, and the two shared "50/50" the rent and utilities (*Id.*, ¶ 7). Defendants assert that, on July 27, 2017, Joshua D. Moody signed a Residential Lease Agreement for the "rental of residence at 600 North Maple, Apt. 3009, North Little Rock, AR 72114" which is a different apartment in the Argenta Flats complex (*Id.*, ¶ 8).  Pursuant to the terms of the Residential Lease Agreement Joshua D. Moody signed on July 27, 2017, he agreed to use Apartment 3309 at 600 North Maple "as living quarters for the residence for [Joshua Moody.]" (*Id.*, ¶ 9).  Defendants assert that, in August 2017, Joshua D. Moody physically moved into his

apartment at 600 Maple Street, Apartment 3309, North Little Rock, Arkansas, and has resided at that location ever since (*Id.*, ¶ 10).  Defendants assert that, at the time of the accident, Joshua D. Moody lived at, and paid rent and utilities for, the apartment at 600 Maple Street, Apartment 3309, North Little Rock, Arkansas, from his bank account with money he had earned from his own business (*Id.*, ¶ 13).  Defendants assert that, at the time of the accident, Joshua D. Moody kept his personal belongings, clothes, and toothbrush at his residence at 600 Maple Street, Apartment 3309, North Little Rock, Arkansas (*Id.*, ¶ 14).  Defendants further assert that, when Joshua D. Moody moved into the Argenta Flats apartment complex in August 2017, he intended for it to be his "permanent home" for the foreseeable future and had no intention of moving back to live with his parents (*Id.*, ¶ 11).  Finally, defendants assert that Joshua D. Moody was not living in the home of his parents, David and Gwendolyn Moody, on November 10, 2017, when the accident occurred (*Id.*, ¶ 16).

> In response to each of these assertions, Metropolitan states something along these lines:

> Uncontroverted that such self-serving attestations were previously made by Joshua Moody and David Moody. . . but disputed to the extent such attestations are relied-upon by the Defendants to establish Joshua Moody's "insured" status under the subject Policy.

(Dkt. No. 24, ¶¶ 5 to 11, 13, 14, 16).

All parties agree that the July 27, 2017, Residential Lease Agreement for Joshua D. Moody's residence at 600 Maple Street, Apartment 3309, North Little Rock, Arkansas, was in effect when the accident occurred on November 10, 2017 (*Id.*, ¶ 12).  Defendants admit that Joshua D. Moody has used his parents' residential address at 3700 Royal Oak Drive, North Little Rock, Arkansas, as a place where he could receive mail, and Metropolitan maintains that Joshua D. Moody used that residence for "significantly more" than only receiving mail, "including as being the residence for which his automobile liability insurance was procured" (*Id.*, ¶ 17).

7

All parties agree that Metropolitan issued a Personal Excess Liability Policy ("Policy"), to David Moody and Gwendolyn Moody which was in effect on November 10, 2017, when the accident occurred (*Id.*, ¶ 18).  The Policy contains a section entitled "Exclusions" under which it purports to exclude form coverage any "personal injury to any **Insured**." (*Id.*, ¶ 19).  The Policy defines "Insured" as "**you** or a relative residing in **your** household." (*Id.*, ¶ 20).  "'**You**' and '**your**'" as used in the Policy is limited to "the named insured shown in the Declarations and that person's resident spouse" (*Id.*, ¶ 21).  David Moody and Gwendolyn Moody are the only "named insureds" shown in the Declarations (*Id.*, ¶ 22).

The clause in the Policy purporting to exclude from coverage any "personal injury to any **Insured**" only excludes from coverage personal injuries to "[David Moody or Gwendolyn Moody] or a relative residing in [David Moody and Gwendolyn Moody's] household." (*Id.*, ¶ 23).  The words "residing" or household" and the phrase "residing in your household" are not defined in the Policy or the Amendatory Endorsement (*Id.*, ¶ 24).

On the application for the Policy, there is a section asking the applicants to "list all members of household and all operators of vehicles/watercraft as required by company." (*Id.*, ¶ 25).  All parties agree that, in response to the section asking applicants to "list all members of household and all operators of vehicles/watercraft as required by company," David Moody and Gwendolyn Moody identified David Moody, Gwendolyn Moody, and Joshua D. Moody (*Id.*, ¶ 26).  Defendants take the position that these three individuals were identified "as either a member of the household or an operator of a vehicle." (*Id.*).  Metropolitan maintains that these three individuals were identified "as all members of household and all operators of vehicles/watercraft." (*Id.*).

IV.     **Standard For Summary Judgment**

Summary judgment is proper if there is no genuine issue of material fact for trial. *UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). Summary judgment is proper if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the non-moving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## V.     Analysis Of Claims

Metropolitan argues that, as a matter of Arkansas law, Metropolitan owes no excess liability coverage to David Moody under the Policy for the claims of his son Joshua D. Moody (Dkt. No. 16, at 3).  According to Metropolitan, the undisputed facts reveal that Joshua D. Moody was a resident relative of the named insured's household in connection to the Policy at the time of the motor vehicle accident in which Joshua D. Moody and his father David Moody were involved on November 10, 2017 (*Id.*).  Metropolitan asserts that, even if Joshua D. Moody may have been living in an apartment separate from his parents at the time of the subject motor vehicle accident, those living arrangements did not change from the period preceding David Moody's execution of the policy applications through the time of Joshua D. Moody and David Moody's single-vehicle accident in November 2017 (*Id.*, at 13).

According to Metropolitan, David Moody, as the named insured to the Policy, executed an Arkansas Personal Auto Application, a Personal Umbrella Application, and a Homeowner Application with Metropolitan in January 2017 in which he noted Joshua D. Moody to be a resident of his household (*Id.*, at 3).  Further, David Moody listed Joshua D. Moody's personally owned 2002 Toyota MR2 Spyder on David Moody's insurance policies and indicated that Joshua D. Moody was a resident of David Moody's household, according to Metropolitan (*Id.*, at 13 n.1). Metropolitan maintains that "[c]ertainly, under the undisputed facts, Joshua D. Moody would be protected by the Policy's excess liability coverage had a claim of a third-party been pursued against him for the same time-period, but that fact equally precludes the Policy's liability coverage from applying to Joshua D. Moody's claims against his own father." (*Id.*, at 3).

The construction and legal effect of insurance contracts, just as other contracts, are matters to be determined by the court. *State Farm Auto. Ins. Co. v. Long*, 259 F.Supp.3d 938, 943 (E.D. Ark. 2017). Only when "the parties rely on disputed extrinsic evidence to support their proposed interpretation" of terms in the insurance contract does the matter become a question of fact for the jury. *Nichols v. Farmers Ins. Co.*, 128 S.W.3d 1, 4 (Ark. Ct. App. 2003). Defendants assert that no extrinsic evidence is needed to explain the meaning of the terms used in the Policy (Dkt. No. 19, at 9).

Defendants assert that how Metropolitan purports to interpret the undefined terms at issue – "residing" and "household" – is not germane to the issue. Instead, defendants contend that what constitutes "residence" and "household" pursuant to Arkansas law and how the undisputed facts apply to the legal definitions does not require parole evidence. Defendants maintain that the indisputable evidence is that Joshua D. Moody was not "residing" in David Moody and Gwendolyn Moody's "household" at the time of the accident. Therefore, the exclusionary clause does not apply, according to defendants (Dkt. No. 19, at 9).

Defendants maintain that the term "insured" as used in the Policy "means [David and Gwendolyn Moody] or a relative residing in [David and Gwendolyn Moody's household." (Dkt. No. 19, at 11). Only David Moody and Gwendolyn Moody are named insureds shown in the Declarations (Dkt. No. 19, at 10). Therefore, defendants assert that, if at the time of the accident, Joshua D. Moody was "residing" someplace other than in David Moody and Gwendolyn Moody's "household," then Joshua D. Moody is not an "insured" under the Policy and the household exclusion does not apply (Dkt. No. 19, at 11).

Defendants argue that neither the Policy nor the Amendatory Endorsement defines the words "resident" or "household" or the phrase "residing in your household." As a result,

defendants claim "[u]ndefined terms of an insurance policy. . . must be construed in their plain, ordinary, and everyday sense and the parameters of the definition should reflect the legal characteristics most frequently attributed to the word."  (Dkt. No. 19, at 11 (quoting *Shelter Mut. Ins.e Co. v. Gardner*, 872 F.Supp. 622, 627 (W.D. Ark. 1995) (quoting *Eagle Start Ins. Co. Ltd. v. Deal*, 474 F.2d 1216, 1220 (8th Cir. 1973))).   Defendants claim that, when these words are construed in this way, Joshua D. Moody did not reside in David Moody and Gwendolyn Moody's household and was not an insured under the Policy to whom the exclusion applies.

To overcome the application question to which David Moody responded yielding the language that appears in the Policy regarding "Household Drivers," defendants assert that, on the application, there is a section asking the applicants to "list all members of household and all operators of vehicles/watercraft as required by company." (Dkt. No. 24, ¶ 25).  According to defendants, "[a]pplicants are to list two separate and distinct categories of individuals – 1) members of household (an undefined term) AND 2) operators of vehicles" (Dkt. No. 19, at 19). Defendants maintain that, in response, David Moody and Gwendolyn Moody identified David Moody, Gwendolyn Moody, and Joshua D. Moody, but defendants also maintain that by listing Joshua D. Moody "neither David nor Gwendolyn Moody represented that Joshua D. Moody was a member of their household.  Instead, Joshua D. Moody is listed as satisfying one of the two categories – either being a member of the household OR being an operator of a vehicle." (Dkt. No. 19, at 19).  Defendants also maintain that "it is ambiguous as to which category Joshua satisfies" and that Metropolitan should be bound by the ambiguity it created (Dkt. No. 19, at 19).

Metropolitan maintains that, in response to the application questions, these three individuals were identified "as all members of household and all operators of vehicles/watercraft." (Dkt. No. 24, ¶ 25).

12

Arkansas law is well settled:

> The language in an insurance policy is to be construed in its plain, ordinary, and popular sense. *Norris v. State Farm Fire & Casualty Co.,* 341 Ark. 360, 16 S.W.3d 242 (2000).  If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction.  *Elam v. First Unum Life Ins. Co.,* [57 S.W.3d 165 (Ark. 2001)].  Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates coverage.  *Norris v. State Farm Fire & Cas. Co., supra.* Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language.  *Id.*  If a provision is unambiguous, and only one reasonable interpretation is possible, this court will give effect to the plain language of the policy without resorting to the rules of construction.  *Id.*  If, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.*

*McGrew v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc.*, 268 S.W.3d 890, 894-95 (Ark. 2007).

With respect to the role of the court:

> The initial determination of the existence of an ambiguity rests with the court and, when a contract is unambiguous, its construction is a question of law for the court. *Kanning v. Allstate Ins. Cos.,* [992 S.W.2d 831 (Ark. App. 1999)].  An insurance policy is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction.  *Id.*  The language in an insurance policy is to be construed in its plain, ordinary, and popular sense.  *Tri–State Ins. Co. v. Sing,* 41 Ark. App. 142, 850 S.W.2d 6 (1993).  Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in the light of their general object and purpose.  *Id.*  The terms of an unambiguous insurance policy are not to be rewritten under the rule of strict construction against an insurer to bind the insurer to a risk which is plainly excluded and for which it was not paid.  *First Fin. Ins. Co. v. National Indem. Co.,* 49 Ark. App. 115, 898 S.W.2d 63 (1995); *Tri–State Ins. Co. v. Sing,* [850 S.W.2d 6 (Ark. App. 1993)].

*Shelter Mut. Ins. Co. v. Williams*, 9 S.W.3d 545, 549 (Ark. Ct. App. 2000).

Moreover, when construing such language:

> Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose.  *Sweeden v. Farmers Ins. Group,* 71 Ark. App. 381, 30 S.W.3d 783 (2000).  Further, different clauses in a contract must be read together and construed so that all of its parts harmonize, if that is at all possible.  *Id.*  It is error to give effect to one clause over another on the same subject if the two clauses

are reconcilable. *Travelers Indem. Co. v. Olive's Sporting Goods, Inc.,* 297 Ark. 516, 764 S.W.2d 596 (1989).

*Ison v. S. Farm Bureau Cas. Co.*, 221 S.W.3d 373, 379 (Ark. Ct. App. 2006).

Exclusions "have been upheld as not violative of the public policy of the State of Arkansas nor inconsistent with the financial responsibility laws." *State Farm Mut. Auto Ins. Co. v. Hollingsworth*, 759 F.Supp. 1355, 1358 (W.D. Ark. 1991) (citing *Cook v. Wausau Underwriters Ins. Co.*, 772 S.W.2d 614 (Ark. 1989)).

Understanding and recognizing these principles, this Court is mindful that Arkansas "case law demonstrates that where there is a dispute as to the meaning of a contract term or provision, be it an insurance or other contract, the trial court must initially perform the role of gatekeeper, determining first whether the dispute may be resolved by looking solely to the contract or whether the parties rely on disputed extrinsic evidence to support their proposed interpretation." *Multi-Craft Contractors Inc. v. Perico Ltd.*, 239 S.W.3d 33, 41 (Ark. Ct. App. 2006)

All parties agree that Metropolitan issued the Policy to David Moody and Gwendolyn Moody which was in effect on November 10, 2017, when the accident occurred (Dkt. No. 24, ¶ 18). The Policy contains a section entitled "Exclusions" under which it purports to exclude from coverage any "personal injury to any **Insured**." (*Id.*, ¶ 19). The Policy defines "Insured" as "**you** or a relative residing in **your** household." (*Id.*, ¶ 20). "'**You**' and '**your**'" as used in the Policy is limited to "the named insured shown in the Declarations and that person's resident spouse" (*Id.*, ¶ 21). David Moody and Gwendolyn Moody are the only "named insureds" shown in the Declarations (*Id.*, ¶ 22).

The clause in the Policy purporting to exclude from coverage any "personal injury to any **Insured**" only excludes from coverage personal injuries to "[David Moody or Gwendolyn Moody] or a relative residing in [David Moody and Gwendolyn Moody's] household." (*Id.*, ¶ 23). The

14

words "residing" and "household" and the phrase "residing in your household" are not defined in the Policy or the Amendatory Endorsement (*Id.*, ¶ 24).

On the same page that the Policy identifies the named insureds as David Moody and Gwendolyn Moody, the Policy identifies household vehicle, address, and driver information:

> **YOUR POLICY HAS BEEN ISSUED AND RATED BASED ON THE FOLLOWING INFORMATION.   PLEASE NOTIFY US OF ANY CHANGES.**
>
> **VEHICLES:**

| YEAR | MANUFACTURER | MODEL | BODY TYPE |
|------|--------------|-------|-----------|
| . . . | | | |
| 2002 | TOYOTA | MR2 SPY | CONVRT |

> **RESIDENCES:**
>
> 3700 ROYAL OAK DR.      NORTH LITTLE ROCK      AR      72116
>
> **\*\*\* HOUSEHOLD DRIVERS \*\*\***

| [DOB] | WILLIAM D MOODY |
|-------|-----------------|
| [DOB] | GWENDOLYN MOODY |
| [DOB] | JOSHUA MOODY |

> **IF YOU HAVE A DRIVER IN YOUR HOUSEHOLD WHO IS NOT LISTED ABOVE, PLEASE NOTIFY US IMMEDIATELY.**

(Dkt. No. 1, at 13).

The Policy provides in pertinent part that, "[b]y acceptance of this policy, you agree that the statements contained in the Declarations and in any application are your true and accurate representations." (Dkt. No. 1, at 17).  On the application for the Policy, there is a section asking the applicants to "list all members of household and all operators of vehicles/watercraft as required by company." (Dkt. No. 24, ¶ 25).  All parties agree that, in response to the section asking

applicants to "list all members of household and all operators of vehicles/watercraft as required by company," David Moody and Gwendolyn Moody identified David Moody, Gwendolyn Moody, and Joshua D. Moody (*Id.*, ¶ 26). Defendants take the position that these three individuals were identified "as either a member of the household or an operator of a vehicle." (*Id.*). Metropolitan maintains that these three individuals were identified "as all members of household and all operators of vehicles/watercraft." (*Id.*).

The Court agrees that, based on the language of the Policy, the clause in the Policy purporting to exclude from coverage any "personal injury to any **Insured**" only excludes from coverage personal injuries to "[David Moody or Gwendolyn Moody] or a relative residing in [David Moody and Gwendolyn Moody's] household." (*Id.*, ¶ 23).

The Court rejects defendants' contention that an "or" can be read into the application question or response provided, requesting that the applicants "list all members of household and all operators of vehicles/watercraft as required by company." (*Id.*, ¶ 25). As a result, the Court rejects any suggestion that Joshua D. Moody was not a member of William Moody and Gwendolyn Moody's household based on the language in the Policy identifying him as a "Household Driver" based on David Moody's response to the application question. The Court makes this determination as a matter of law based on the Policy. Joshua D. Moody was a member of David Moody and Gwendolyn Moody's "household."

Even with that legal determination, however, all parties agree that the word "residing" and the phrase "residing in your household" are not defined in the Policy or the Amendatory Endorsement (Dkt. No. 24, ¶ 24). As a result, there is an ambiguity in the language of the Policy and specifically the language of the exclusion upon which Metropolitan intends to rely. That

16

dispute may not be resolved by looking solely to the contract.  Instead, the parties rely on disputed inferences to be drawn from extrinsic evidence to support their proposed interpretations.

Although the parties appear to agree on many of the underlying facts with respect to Joshua D. Moody's living arrangements from 2015 to 2017; Joshua D. Moody's continued, uninterrupted, and repeated use of the 3700 Royal Oak Drive, North Little Rock, Arkansas 72116 address for purposes such as receiving mail, banking, and his ownership, registration, and insuring of the 2002 Toyota MR2 Spyder convertible after 2015 and that was involved in this accident (Dkt. Nos. 19-3, at 7, 13-14; 19-4, at 7-10, 15-21, 29-32); and David Moody's representations on the application for the Policy and representations on the executed Arkansas Personal Auto Application, a Personal Umbrella Application, and a Homeowner Application with Metropolitan in January 2017 in which according to Metropolitan David Moody noted Joshua D. Moody to be a resident of his household (Dkt. Nos. 15-1; 16, at 3), among other matters, the inferences that the parties request that the Court draw from these extrinsic facts are controverted and in dispute.  As a result, the Court denies all motions for summary judgment; there are factual disputes that remain for trial.  *See State Farm Mut. Auto. Ins. Co. v. Hollingsworth*, 759 F. Supp. 1355, 1361 (W.D. Ark. 1991) (denying summary judgment because factual contentions and conclusions to be drawn therefrom were all disputed by conflicting testimony and other inferences "material" to the controversy of whether an insured's adult, married daughter was residing with or living with insured in his household within the meaning of family or household exclusion of policy); *see also State Farm Mut. Auto. Ins. Co. v. Pennington,* 215 F.Supp. 784 (E.D. Ark. 1963) (granting summary judgment against insurer and determining that insurer failed to sustain burden of proving that family and household exclusion of policy applied).

## VI.     Conclusion

For these reasons, the Court denies Metropolitan's motion and defendants' cross-motion for summary judgment (Dkt. Nos. 15; 19).  The Court grants the parties' joint motion for limited relief of the Court's Scheduling Order (Dkt. No. 35).  The Court directs the parties to file with the Court within 21 days from the entry of this Order a joint written status report informing the Court of the status of discovery and proposing deadlines for discovery and other pretrial deadlines to be reset by the Court.  By separate Order, the Court will set this matter for trial.

It is so ordered this 27th day of September, 2021.

Kristine G. Baker'
United States District Judge